T.C. Memo. 2004-18

UNITED STATES TAX COURT

ANTONIO B. SECAPURE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5019-02.                    Filed January 28, 2004.

Charles E. Smith, Jr., for petitioner.

Daniel J. Parent, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Judge:  Respondent determined a deficiency in petitioner's 1995 Federal income tax of $37,344, and additions to tax for 1995 for failure to (a) file a return and (b) pay estimated tax.  After concessions, the issues for decision are:

1.    Whether petitioner's basis in property related to a Chevron gas station business that he sold in 1995 was zero, as

respondent contends, or $164,000, as petitioner contends.  We hold that petitioner's basis was $5,000.

2.    Whether petitioner is liable for additions to tax for 1995 for (a) failure to file an income tax return and (b) failure to pay estimated tax.  We hold that he is.

Unless otherwise specified, section references are to the Internal Revenue Code as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.    Petitioner

Petitioner resided in Hercules, California, when he filed the petition in this case.  He was married in 1994 and 1995.  In 1994, petitioner and his wife owned rental real estate properties in Richmond, California.  They claimed depreciation deductions for these rental properties on their 1994 income tax return.

B.    The Chevron Station

1.    Purchase by Petitioner in 1988

In 1988, petitioner paid $65,000 to buy lease rights, tools, equipment, office fixtures, accessories, inventory, and goodwill related to, and the right to operate, a Chevron gas station located at 2234 MacDonald Ave., Richmond, California.  Petitioner and the seller allocated the $65,000 purchase price to tools,

equipment, office fixtures, accessories, inventory, and goodwill as follows:

| | |
|---|---|
| Tools and equipment[1] | $23,474.18 |
| Goodwill | 5,000.00 |
| Leasehold Right | 21,525.82 |
| Motor Fuel | 10,000.00 |
| Inventory | 5,000.00 |
| | $65,000.00 |

[1] Tools and equipment included office fixtures and accessories.

The seller leased to petitioner the building and land on which the Chevron gas station is located from 1988 to 1993. Petitioner bought the building and land in 1993.

2.   Petitioner's Sale of the Chevron Gas Station Business

In 1995, petitioner sold tools, equipment, office fixtures, inventory, and goodwill related to, and the right to operate, the Chevron gas station business, but not the building and land on which it is located, for $200,000.  The buyers signed a document entitled "Business Opportunity Purchase Agreement and Deposit Receipt", in which they agreed to buy the Chevron gas station business in 1995 and pay petitioner as follows:

| | |
|---|---|
| $70,000 | Paid by buyers at close of escrow |
| 65,000 | Loan from 3d party assumed by buyers |
| 65,000 | To be paid as follows: $805.91 (which includes principal and interest at 8.5 percent) per month. |
| $200,000 | |

Petitioner paid a $10,000 commission to Joy & Associates, Inc., the agent for the buyers, and a $10,000 commission to Counties West Real Estate, the agent for petitioner, for their

services in connection with the 1995 sale of the Chevron gas station business.

In 1995, the buyers made payments to petitioner on the $65,000 loan totaling $7,253. Of that amount, $4,054 was interest and $3,199 was principal. Also in 1995, petitioner leased the land and building to the buyers.

## C. Petitioner's Other Income in 1995

In 1995, petitioner received taxable pension income of $11,061 and taxable interest income of $42 in addition to the interest from the installment sale of the Chevron gas station business.

## D. Petitioner's Returns

Alberto S. Nunez (Nunez) prepared and signed (as preparer) petitioner and petitioner's spouse's joint 1994 return on August 6, 1996. Petitioner and his spouse also signed that return on August 6, 1996. They claimed no deduction for depreciation related to the Chevron gas station business on their 1994 return.

Petitioner applied for and received an automatic 4-month extension to file his 1995 return. Nunez prepared a joint 1995 return for petitioner and his spouse. Nunez signed the 1995 return on August 14, 1996. Petitioner paid Nunez $1,375 to prepare that return. Petitioner and his spouse did not report the sale of the Chevron gas station business on their 1995 return. Petitioner and his spouse reported $615 of tax due on

their 1995 return.  In 1997, respondent prepared and processed a substitute for return for petitioner's 1995 tax year.

OPINION

A.  Petitioner's Basis in Property Related to His Chevron Gas Station Business

1.  Contentions of the Parties

Petitioner had an original basis of $65,000 in the Chevron gas station business in 1988.  Respondent contends that petitioner's basis in property related to the Chevron gas station business that he sold in 1995 was zero.  Petitioner contends that his basis in 1995 in the property (other than the land and building) related to the Chevron gas station business was the $65,000 purchase price plus $99,000 for improvements to the Chevron gas station.[1]

2.  Whether Petitioner Bought and Sold Only Intangible Property

Petitioner testified that he bought and sold only a non-depreciable right to use the Chevron name and that he did not buy

---

[1]  By pretrial order, we ordered the parties to file pretrial memos.  At trial, we ordered the parties to file posttrial briefs.  Respondent complied with these orders; petitioner did not.  Under these circumstances, it would be appropriate to default petitioner on all issues for which he bears the burden of proof. Stringer v. Commissioner, 84 T.C. 693, 704-708 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986); Furniss v. Commissioner, T.C. Memo. 2001-137; McGee v. Commissioner, T.C. Memo. 2000-308; Pace v. Commissioner, T.C. Memo. 2000-300; Hartman v. Commissioner, T.C. Memo. 1999-176.  However, we decide this case on the record as it stands. Our understanding of petitioner's position is based on his petition, opening statement, and trial testimony.

or sell any equipment. We disagree. Petitioner's 1988 purchase document provides that petitioner bought tools, equipment, office fixtures, accessories, goodwill, and inventory needed to operate the Chevron gas station. In 1995, petitioner sold tools, equipment, office fixtures, accessories, and inventory needed to operate, and the right to operate, the Chevron gas station. The 1995 sale document states that petitioner sold the Chevron gas station business, "including all improvements, fixtures, equipment". These documents contradict petitioner's testimony that he did not buy or sell equipment or other depreciable property. We give more weight to the documentary evidence on this point than to petitioner's testimony.

In 1988, petitioner and the seller allocated $5,000 of the $65,000 purchase price to goodwill. Goodwill was not depreciable in 1988.[2] Sec. 1.167(a)-3, Income Tax Regs. The basis of depreciable property is reduced by the amount of allowable depreciation even if the taxpayer does not claim a depreciation deduction. Sec. 1016(a)(2); sec. 1.1016-3(a)(2)(i), Income Tax Regs. Petitioner has not shown that he had any basis remaining in property (other than $5,000 for goodwill) he sold relating to

---

[2] Sec. 197(a) provides that goodwill is amortized ratably over 15 years. Sec. 197 generally does not apply to property acquired before Aug. 11, 1993. Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, sec. 13261(g), 107 Stat. 540.

the Chevron gas station in 1995.[3]  We conclude that petitioner

had a basis of $5,000 when he sold the gas station in 1995.

    3.   Whether Petitioner Paid $99,000 for Improvements

    Petitioner testified and contends that, in 1994, he

purchased about $99,000 in improvements, including a gas

dispenser pump, underground piping, and equipment to monitor

leaks.  We decide whether a witness is credible on the basis of

objective facts, the reasonableness of the testimony, and the

demeanor and consistency of statements made by the witness.

Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Wood

v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C.

593 (1964); Pinder v. United States, 330 F.2d 119, 124-125 (5th

Cir. 1964); Concord Consumers Hous. Coop. v. Commissioner, 89

T.C. 105, 124 n. 21 (1987).  We are not persuaded by petitioner's

testimony for several reasons.  First, petitioner did not claim

any depreciation related to improvements for the Chevron gas

station business on his and his spouse's 1994 income tax return.

However, petitioner and his wife knew about depreciation

deductions because they claimed depreciation deductions for

rental real estate on their 1994 return.  Second, petitioner

offered no documentary evidence or other corroboration that he

---

[3]  We treat petitioner as bearing the burden of proof
because the record does not show that the examination commenced
after July 22, 1998, and petitioner does not contend and has
offered no evidence that sec. 7491(a) applies in this case.

had purchased those items. Third, petitioner's testimony lacked credibility in other areas, such as his testimony that he neither bought nor sold equipment or tools, which, as discussed above, was inconsistent with the documents prepared at the time of the sale.

### 4. Conclusion

We concluded that petitioner's basis in the Chevron gas station property he sold in 1995 was $5,000.

### B. Whether Petitioner Is Liable for the Addition to Tax for 1995 for Failure To File

Petitioner contends that he and his spouse filed their 1995 Federal income tax return.

A taxpayer is liable for an addition to tax of up to 25 percent for failure to file a Federal income tax return unless the failure was due to reasonable cause and not willful neglect. Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985). In court proceedings arising in connection with examinations beginning after July 22, 1998, section 7491(c) places on the Commissioner the burden of producing evidence showing that it is appropriate to impose the addition to tax under section 6651(a)(1).[4] Dennis Brown (Brown), a revenue agent for respondent, testified that, according to respondent's

---

[4] Dennis Brown, an agent for respondent, testified that respondent prepared a 1995 substitute for return and processed it in 1997. This suggests that the examination began before July 22, 1998, and that sec. 7491(c) does not apply.

administrative file, petitioner did not file a return for 1995. Thus, respondent has met the burden of production (if applicable) relating to petitioner's liability for the addition to tax for failure to timely file.

Petitioner testified and contends that he filed his 1995 income tax return and that Exhibit 7-P is an unsigned copy of that return. He contends that he would not have paid $1,375 to have a return prepared, but not file it. He further points out that Brown testified that it is possible that respondent could lose a return.

Petitioner answered "yes" when he was asked on direct examination if he had filed a 1995 return. He provided no other details about filing his 1995 return. He did not recall when he filed the return. Exhibit 7-P states that petitioner owed $615 in tax. Petitioner testified that he believed that he had paid the $615, but he offered no documentary evidence (e.g., a canceled check) showing that he had. As discussed above in paragraphs A-2 and A-3, petitioner's testimony that he bought in 1988 and sold in 1995 only intangible nondepreciable rights was not credible. Similarly, petitioner's testimony that he filed a 1995 return is unconvincing.

Nunez prepared a joint 1995 return for petitioner and his spouse, but respondent did not receive it. We conclude that petitioner and his spouse did not file it. Petitioner bears the

burden of proving that his failure to file was due to reasonable cause and not willful neglect. See <u>United States v. Boyle</u>, <u>supra</u>.

Petitioner did not offer evidence showing that he had reasonable cause for not filing his 1995 return. We conclude that petitioner is liable for the addition to tax under section 6651(a)(1) for failure to file his 1995 income tax return.

C.  <u>Whether Petitioner Is Liable for the Addition to Tax for Failure To Pay Estimated Tax</u>

Respondent determined that petitioner is liable for the addition to tax under section 6654 for failure to pay estimated tax for 1995. We have jurisdiction to review this determination because petitioner did not file a return for 1995. Sec. 6665(b)(2); <u>Meyer v. Commissioner</u>, 97 T.C. 555, 562 (1991).

To be liable for the addition to tax under section 6654, a taxpayer must have underpaid or failed to pay estimated tax for the year in issue. Sec. 6654(a). A taxpayer is liable for the addition to tax for failure to pay estimated tax unless the taxpayer shows that he or she meets one of the exceptions provided in section 6654(e), none of which apply here.

Brown reviewed respondent's administrative file in this case, and testified that petitioner made no tax payments for

1995.  Thus, respondent meets the burden of production (if applicable) under section 7491(c).[5]

Petitioner alleged in the petition that all of respondent's adjustments were wrong, but he offered no evidence and made no argument on this issue.  We conclude that petitioner is liable for the addition to tax under section 6654 for failure to pay estimated tax for 1995.

To reflect concessions and the foregoing,

Decision will be

entered under Rule 155.

[5] As discussed in note 3, above, it appears that sec. 7491(c) does not apply in this case.